July 31, 1939. } No. 3117.

OPINION OF THE JUSTICES.

569

*To His Excellency the Governor and the Honorable Council:*

The undersigned Justices of the Supreme Court have considered the inquiry presented by your resolution of June 29, and furnish this opinion in response thereto. Judge Page asks to be excused from expressing his views, for reasons which in his belief disqualify him.

Examination of the Act for Minimum Wage for Women and Minors (Laws 1933, *c.* 87) shows clearly that the administration of the act belongs under the direction, control and supervision of the Commissioner of Labor. It assigns to him the exclusive regulatory charge of executing the act in the manner and under the procedure it provides. It confers upon him various specified powers, authority and duties, and, except for court appeals, final discretionary decisions upon all matters arising under it rests with him.

Certain of his powers are enumerated in Section 3 of the act, titled Powers of Commissioner. This section gives him "or any representative duly authorized by him . . . full power and authority" to investigate, examine, inspect and require information in cases inviting attention, in furtherance of efficient operation of the act. While in literal reading of the section a representative has equally with the Commissioner the powers and authority vested by the section, a representative is to be regarded as a subordinate of the Commissioner. The act in its entirety manifests the requirement of this interpretation.

It was under this section that Mrs. Elkins was appointed a representative of the Commissioner, with the title bestowed of Minimum Wage Administrator. No fair doubt exists that he made the appointment. In his letter of August 30, 1935, to the Governor and Council he requested their "approval of the appointment" of her as his authorized representative, at a specified salary. This request sought an approval of the salary, if also of the appointment.

Approval of the proposed salary was necessary. The appropria-

tion for administering the act in each of the fiscal years ending in 1936 and 1937 was in a single item of $5,000 (Laws 1935, cc. 157, 158). By another enactment (Laws 1927, c. 131), "The expenditure of any moneys appropriated or otherwise provided to carry out the work of any department of the state government shall be subject to the approval of the Governor, with the advice of the council . . . ." It was therefore incumbent upon the Commissioner to obtain approval from the Governor and Council for the salary, as a specific use of the appropriation.

In acting upon the Commissioner's request the Governor and Council assumed to make the appointment and fix the salary. Instead of approving the salary proposed by him they acted on the theory that he had taken no action but had recommended action by them, both in appointing and in fixing the salary. This theory had no valid basis of support. Approval of the salary was all that they could properly act upon, and was all that their action validly amounted to. In so far as approval of the appointment was sought, the request for it was improper. The Commissioner's authority to appoint is non-delegable, and his appointment of Mrs. Elkins was in his sole discretion, not subject to acceptance or rejection by other officials of the State government.

We find convincing evidence showing it to be the purpose of the act that the Commissioner, in his sole charge of the operation of the act, was empowered to make all appointments required for its due execution.

The statutory designation of an appointee as the Commissioner's representative is significant. The thought of authority delegated by him is implicit. It would naturally be understood that his "representative" was to be his own appointee in the absence of express provision to the contrary. The responsibility for the administration of the act being his, he is officially chargeable with the conduct of those under his direction. The full and free rein designed by the act to devolve upon him would be impractically checked, coöperation between him and his representatives would be less secure, and the efficient functioning of the act would be impaired, if the appointing power resided elsewhere. The intent of the act that the Commissioner should have sole and non-delegable authority to make all appointments provided for or contemplated by it, and should have full control over his representatives, does not seem subject to reasonable challenge.

The view that the Commissioner's representatives were to be independent of him, as though holding position or office in a separate

executive department, disregards the explicit and implicit provisions of the act, as appears by their generalization already stated. Legislative appropriations subsequent to the passage of the act and assigning to the bureau of labor the expense of administering the act (Laws 1935, *cc.* 157, 158; Laws 1937, *cc.* 166, 167; Laws 1939, *cc.* 223, 234) are in confirmation of the design that the Commissioner should have executive charge of the operation of the act. Although the appropriations made after 1935 include a specified salary for the "administrator" or "director" of the "minimum wage division" in the "department of labor," they constitute no amendment of the act, either to create an office free from the Commissioner's control or to transfer appointing power from him to the Governor and Council. The salary for which the appropriations were made was for the Commissioner's chief representative, who had come by executive action and usage to receive the appellation later employed by the legislature. It is incredible that recognition and adoption of an appointee's designation was meant to be an amendment of the act in any respect whatsoever. And the provision for salaries for four "investigators" in the legislation of this year merely shows the legislative understanding that the Commissioner might appoint a number of representatives, in addition to one who should be at the head and should have greater responsibility. The provision permitted the formation of an organized facility in the functioning of the act, for which no amendment was required. It made possible development and extension in effecting the purposes of the act, but without enlarging its scope or modifying its terms. Its scheme and mechanism remained unaltered.

It hardly needs to be observed that any attempts through executive action to deflect from the act are without force. The principle of practical construction applies only when action taken conforms with legislation in one view in which it may be read. Any executive action or practice conflicting with the scheme and mechanism of legislation is of course impotent and ineffective.

In our opinion the Commissioner's authority to appoint predicates authority in his discretion to dismiss an appointee or to revoke an appointment, when, as in the case of Mrs. Elkins, no contractual relations for term of service exist or no statutory prescription has been enacted for tenure or duration of service or removal therefrom. The established rule of custom and practice that one who may appoint may remove or discharge when nothing to the contrary or in regulation has been ordained, governs.

Our conclusion is that you have no authority to act upon the Commissioner's removal of Mrs. Elkins from her position as his representative in administering the act.

JOHN E. ALLEN.
THOMAS L. MARBLE.
OLIVER W. BRANCH.
PETER WOODBURY.

July 31, 1939.

*Walter A. Calderwood, Jr.*, by brief, for the Commissioner of Labor.

*Donald Knowlton*, by brief, for Mrs. Elkins.